UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re<br><br>SHERWOOD INVESTMENTS<br>OVERSEAS LIMITED INCORPORATED<br>Debtor. | )<br>)<br>)<br>)<br>)<br>) | Case No. 6:10-bk-00584-KSJ<br>Chapter 7 |
| SHERWOOD INVESTMENTS<br>OVERSEAS LIMITED INCORPORATED<br><br>Plaintiff,<br>vs.<br><br>THE ROYAL BANK OF SCOTLAND<br>N.V., f/k/a/ ABN AMRO BANK N.V.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary No. 6:10-ap-158-KSJ |

**MEMORANDUM OPINION**
**DENYING DEFENDANT'S REQUEST TO APPLY FOREIGN LAW**

Defendant, the Royal Bank of Scotland N.V., f/k/a ABN AMRO Bank N.V. ("RBS"), asks for a ruling as to whether "English" law or U.S. law applies to this adversary proceeding.[1] Defendant asserts the term sheets highlighting key provisions of the parties' relationship include a binding English choice of law. Plaintiff argues Florida law applies because the term sheets are not binding contracts, and Florida has the most significant relationship to the causes of action. The Court agrees in part. Florida law applies to plaintiff's tort claims based on the weight of the significant relationship factors, but a choice-of-law decision on plaintiff's contract claims is premature because it involves factual findings the District Court will make at trial.

[1] RBS filed its Notice of Application of Foreign Law (Doc. No. 49), along with its Memorandum of Law in Support of its Notice of Application of Foreign (English) Law (Doc. No. 62). The plaintiff filed its Response and Memorandum of Law in Opposition to Defendant's Notice of Application of Foreign Law (Doc. No. 63). Defendant responded in its Response to Application of Foreign Law (Doc. No. 67), followed by its Declaration in Support of Reply Concerning Application of Foreign Law (Doc. No. 68). Plaintiff filed a Sur-Reply in Opposition to Defendant's Notice of Application of Foreign Law (Doc. No. 71).

The plaintiff in this case, Sherwood Investments Overseas Limited, Inc., is a British Virgin Islands corporation with its principal place of business in Florida.[2] It registered with the State of Florida in 2004 as a foreign profit corporation[3] and is wholly-owned by the Johanna Benscher Family Settlement, a Liberian trust.[4] Plaintiff's wholly-owned subsidiary, Sherwood Farms, Inc., is an orchid grower and Florida corporation with its corporate offices, greenhouses, and warehouse located in Groveland, Florida. Through its investment management operations, plaintiff purchased Sherwood Farms and historically supplied it with necessary operating capital. On January 15, 2010, both companies filed voluntary petitions for reorganization in Orlando under Chapter 11 of the Bankruptcy Code and subsequently have filed a joint plan of reorganization.[5]

On June 4, 2010, plaintiff filed its 13-count complaint initiating this adversary proceeding against defendant.[6] The complaint seeks to recover money or property and to avoid alleged fraudulent conveyances based on four counts of breach of contract (Counts I – IV), one count of unjust enrichment (Count XI), and six tort counts (Counts V – X). Plaintiff also alleges two counts (Counts XII and XIII) of fraudulent transfers under § 548 of the Bankruptcy Code.[7]

In April 2006, plaintiff established a commercial relationship with ABN AMRO Bank N.V., a bank incorporated in the Netherlands, with a branch office in London, England. (In October 2007, defendant acquired certain ABN business units and subsequently took over ABN's relationship with plaintiff). Plaintiff and defendant carried on an investment and trading relationship from April 2006 through September 2008. The parties' relationship was primarily

[2] Plaintiff argues in Doc. No. 1 that its principal place of business is in Tortola, BVI, and in Doc. No. 63 that its principal place of business is in Florida. The Court already has found that at least half of plaintiff's business and records were in Florida (Doc. No. 36).
[3] FLA. STAT. § 607.1503 (2003) (allowing a foreign corporation to transact business in the state of Florida).
[4] Doc. No. 1.
[5] Doc. No. 1 in 11-bk-00584; Doc. No. 1 in 11-bk-00578.
[6] Doc. No. 1.
[7] All references to the Bankruptcy Code are to 11 U.S.C. § 101 et seq.

between Julian Benscher, an authorized agent of plaintiff residing and conducting business in Windermere, Florida, and one of three successive RBS agents working in its London office. Benscher, acting on behalf of plaintiff, worked with RBS representatives to create structured financial products called "certificates." Plaintiff then would acquire the certificates through its agent at UBS AG, in Zurich, Switzerland. The material trading negotiations took place between defendant in London and plaintiff in Windermere, Florida. The parties traded tens of millions of dollars worth of certificates over their 18-month relationship, negotiating each individual trade via telephone calls, Bloomberg terminals, instant messages, and emails.

The parties agree that neither ever signed a master agreement or formal contract to govern their trading agreement. The parties however did create term sheets to provide "a summary of some of the key features of the Certificates."[8] The term sheets clearly state that they are for "information purposes only" and specifically "[do] not constitute an offer to sell or a solicitation to buy any security or other financial instrument."[9] The term sheets also contain language that suggests English law applies ("Applicable Law: English").[10] The term sheets do not list a start date or end date governing the relationship. The term is open ended. For example, the section "Expiration Date" says "Open End – No fixed Expiration Date" and the "Valuation Date" is expressed as "The last Trading Day of March of each year, commencing at least one year after the Issue Date."[11]

The dispute between the parties arose when, through a series of events relating to the global financial crisis, plaintiff lost $6.8 million in its investments in the certificates. Plaintiff claims that defendant's delay in communication was a breach of oral contract that caused the loss, and also claims that defendant misrepresented information, failed to communicate, and

---

[8]Doc. No. 1.
[9] Doc. No. 18–7.
[10] *Id.*
[11] *Id.*

failed to carry on their customary course of dealing. Defendant counters it made no misrepresentations, nor was there an oral contract to breach, but rather the plaintiff suffered a similar economic loss as suffered by many around the world.

Regardless of the cause, plaintiff's financial losses prompted it to file for Chapter 11 in early 2010. Plaintiff now seeks in this adversary proceeding to recover from defendant for breaches of contract, unjust enrichment, torts based on fraud and misrepresentation, and for fraudulent transfers under the Bankruptcy Code. The Court granted defendant's motion for jury trial before the U.S. District Court for the Middle District of Florida.[12] Before this Court remains a determination as to whether English or US law applies to plaintiff's claims.

**Defendant has met its pleading burden under Federal Rule 44.1.**

Plaintiff incorrectly alleges that defendant has not met its burden under Rule 44.1 of the Federal Rules of Civil Procedure establishing pleading standards for the party asserting the foreign law. [13] Rule 44.1 requires a party intending to raise an issue about foreign law to give notice in a pleading or other writing. Proponents of foreign law must be able to "credibly argue that a different result would follow if that jurisdiction's laws were followed," possibly by directing the court to the foreign law or statute.[14] "Where either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law except when to do so would not meet the needs of

[12] Doc. No. 69.
[13] Defendant filed a notice for application of foreign law in Doc. No. 49.
[14] *Mutual Services Inc. Co. v. Frit Industries, Inc*., 358 F33d 1312, 1322 (11th Cir. 2004).

the case or would not be in the interests of justice."[15] While doing nothing is not an option, courts require a "reasonable" notice of the possible application of foreign law.[16]

Normally an attorney's un-rebutted affidavit on foreign law is sufficient to establish the substance of that law.[17] The purpose of the Rule 44.1 pleading notice is not to spell out all the precise contents of foreign law, but rather to inform the court and litigants that the foreign law is relevant to the lawsuit.[18]

Defendant has submitted a timely notice of foreign law,[19] has pleaded that it is justified in its application, and has provided a lengthy affidavit to support its request.[20] The affidavit and pleadings suggest how the two forums' laws differ: "Florida law potentially provides for punitive damages, while English law does not."[21] The affidavit also cites specific sections of applicable law and outlines in detail the necessary elements of some of the applicable causes of action. This Court finds that defendant has met its foreign law pleading burden under Rule 44.1.

---

[15] *Id* (citing *Cavic v. Grand Bahama Dev. Co., Ltd.,* 701 F.2d 879, 882 (11th Cir. 1983)). *See also Brisson v. Ford Motor Co.*, 602 F.Supp.2d 1227, 1231 (M.D. Fla. 2009) (citing *Continental Gas. Co. v. City of Jacksonville,* 550 F. Supp. 2d 1312, 1331 (11th Cir. 2008) for the proposition that Florida law governs contract claims where the parties theoretically consent because they do not raise any conflict-of-law issues).

[16] *Smith v. Carnival Corp.*, 584 F.Supp.2d 1343, 1349–50 (S.D. Fla. 2008) (adopting *Rationis Enters., Inc. of Panama v. Hyundai Mipo Dockyard Co.,* 426 F.3d 580, 585 (2d Cir. 2005) and referencing CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2443 (2d ed.1994)).

[17] *Cooper v. Meridian Yachts, Ltd*., 575 F.3d 1151, 1165 (11th Cir. 2009). The foreign-law proponent in *Cooper* provided a one-paragraph affidavit supporting its application of foreign law, but still failed to meet its burden because it was incomplete, possibly inaccurate, gave no citations to any relevant portions of the foreign law or how the foreign court would resolve the dispute, and provided no relevant information in English about the issue before the court. The *Cooper* court found it reasonable to apply Florida law in that case because the parties never provided the court "with sufficient information on how [foreign law] would resolve this dispute . . . . [Florida law] was the original forum of this litigation, it has some factual connections to this litigation and no other jurisdiction has stronger ties."

[18] CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2443 (2d ed.1994).

[19] Doc. No. 49.

[20] Doc. No. 18–4: Andy Briggs Affidavit.

[21] Doc. No. 67 at 4 (further supported by Plaintiff's Sur-Reply in Opposition to Defendant's Notice of Application of Foreign Law; Doc. No. 71).

**Factual disputes prevent any choice-of-law ruling on purported oral contract.**

Absent a contractual choice-of-law provision, "a federal court sitting in diversity will apply the conflict-of-laws rules of the forum state."[22] There is no logical reason why this rule should not apply to an adversary proceeding in bankruptcy.[23] Federal courts resolving bankruptcy disputes under 28 U.S.C. § 1334 have adopted this principal "when the underlying rights and obligations of the parties are defined by state law."[24] It is appropriate for this Court to apply Florida's conflict-of-law rules to determine which law controls.

A court analyzing a choice-of-law question first must characterize the legal issues and determine whether they rest in tort, contract, property law, or another body of law.[25] It then determines the choice-of-law rule that the forum state applies to that particular issue.[26] In Florida, courts enforce contractual choice-of-law provisions unless the law of the chosen forum contravenes public policy.[27] Florida law states "[w]hen a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties."[28] Where the language of a contract is not ambiguous or subject to conflicting interpretations, "construction of the contract is a question of law for the court, not a question of fact for the jury."[29] When a contract is ambiguous or its terms are disputed, Florida applies *the lex loci contractus* rule for contractual

---

[22] *Grupo Televisa, S.A., v. Telemundo Commc'ns Grp.,* 485 F.3d 1233, 1240 (11th Cir. 2007).

[23] *In re Titan Cruise Lines, 353* B.R. 919, 923 (Bankr. M.D. Fla. 2006) (citing *Hillsborough Holdings Corp. v. Celotex Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla.1994)).

[24] *Mukamal v. Bakes,* 378 Fed. Appx. 890, 896 (11th Cir. 2010) (citing *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00–8688, 2002 WL 362794, at *5 (S.D.N.Y. Mar. 6, 2002)).

[25] *Acme Circus Operating Co. Inc. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983).

[26] *Id.*

[27] FLA. STAT. § 671.105 (2002); *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306 (Fla. 2000) (citing FLA. STAT. 671.105(1)).

[28] FLA. STAT. § 671.105 (2002).

[29] *Gulf Group Holdings, Inc. v. Coast Asset Mgmt. Corp*., 516 F. Supp. 2d 1253, 1266 (S.D. Fla. 2007) (citations omitted).

conflict-of-law determinations.[30] Unlike tort-based conflict-of-law questions, Florida has specifically rejected the Restatement's approach to contractual conflict-of-law disputes.[31]

Plaintiff here argues that the course of dealing between plaintiff and defendant created an oral contract that defendant then breached by delaying its customary course of dealing and failing to communicate. The terms of this disputed contract are undefined and there is no known choice-of-law provision, nor have parties identified how Florida law and English law differ on contract claims. According to the *lex loci contractus* doctrine governing these kinds of contract disputes, courts apply the law of the state or nation where the contract is made to questions of contract validity.[32] The law of the place where the contract is to be performed governs matters of contract performance.[33] In Florida a party makes a contract where the "last act necessary to complete the contract is done,"[34] but parties make oral contracts in the state or nation where parties reach an oral agreement.[35]

The existence of the parties' purported oral contract under *lex loci contractus* is a fact-intensive undertaking that will require findings by the District Court at trial.[36] Without first making findings of fact as to where the parties made the purported oral contract or what specific performances were required, a choice-of-law determination based on an oral contract is premature. The same reasoning applies to plaintiff's unjust enrichment claim.[37] Therefore, the choice-of-law decision based on Florida's *lex loci contractus* doctrine for plaintiff's breach of oral contract and unjust enrichment claims (Counts I-IV, XI) are best left to the District Court.

---

[30] *Trumpet Vine Inv., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1119 (11th Cir. 1996) (citing *Sturiano v. Brooks*, 523 So.2d 1126. (Fla. 1988)).
[31] *See Brisson v. Ford Motor Co.*, 602 F. Supp. 2d 1227, 1231 (M.D. Fla. 2009); *Sturiano v. Brooks*, 523 So.2d 1126, 1129 (Fla. 1998); CONFLICT OF LAWS (5TH ED.) (2010).
[32] *Motmanco, Inc. v. McDonald's Corp*, 2005 WL 1027261, *3 (M.D. Fla. March 30, 2005) (citations omitted).
[33] *Id* (citing *Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721, 724 (M.D. Fla. 2000)).
[34] *Motmanco, Inc.*, 2005 WL 1027261 at *3 (citations omitted).
[35] *Motmanco, Inc.*, 2005 WL 1027261 at *3 (citations omitted).
[36] Motion for Jury Trial by Defendant, Doc. No. 13; Motion granted, Doc. No. 66. *American Home Assurance Company v. Weaver Aggregate Transport, Inc.*, 773 F. Supp. 2d 1317, 1324 (M.D. Fla. 2011) (denying a motion to dismiss because of the fact-intensive nature of the unjust enrichment analysis).
[37] *Id* (citing *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1119 (11th Cir. 1996)).

**As a matter of law the term sheets are not binding contracts.**

Defendant's argument that the term sheets created an express contract between the parties binding them to a contractual choice of law is incorrect because the term sheets did not contain an actual offer. To prove a contract under Florida law, a party must prove an offer, an acceptance, consideration, and sufficient specifics about the essential terms of the deal.[38] The parties' mutual agreement on all material terms is an essential part of contract formation.[39] This "definite and distinct intention to be bound" requires a meeting of the minds.[40] An acceptance shows a meeting of the minds and a manifestation of assent if it is in the same manner required by the offer.[41] Florida law recognizes the creation of a valid and enforceable contract when a party clearly assents to an agreement, "even when that assent contemplates the future execution of a contract that is ultimately never executed."[42]

The term sheets here did not and could not create a binding contract because they lack the existence of an offer or the required manifestation of mutual assent. The term sheets themselves declare "this term sheet is for information purposes only and does not constitute an offer to sell or a solicitation to buy any security or other financial instrument."[43] It is not possible for plaintiff to accept an offer that does not exist.

Moreover, the term sheets are unsigned. A signature is not a contract requirement in every case; Florida's Statute of Frauds, however, requires certain contracts to be both in writing and signed by the party to be charged.[44] One such contract is an agreement in which the parties

---

[38] *Vega v. T-Mobile Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009); *In re Harrell*, 351 B.R. 221, 241 (Bankr. M.D. Fla., 2006) (citations omitted).
[39] *Holloway v. Gutman*, 707 So.2d 356, 357 (Fla. App. 5 Dist. 1998) (citing *Strong & Trowbridge Co. v. H. Baars & Co.*, 54 So. 92 (1910)).
[40] *Gutman*, 707 So.2d at 357–358.
[41] *Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721, 725 (M.D. Fla. 2000) (citing RESTATEMENT (SECOND) OF CONTRACT § 50 (1979)).
[42] *Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F. Supp. 2d 1315, 1323 (M.D. Fla., 2002) (citing *Terra Group, Inc. v. Sandefur Management, Inc.*, 527 So. 2d 849, 849–50 (Fla. App. 5th D.C.A.1988)).
[43] Doc. No. 18–7.
[44] FLA. STAT. ANN. § 725.01 (1998).

did not contemplate completion of performance within one year.[45] The parties clearly must intend contract performance to extend beyond one year for the Statute of Frauds to render an agreement unenforceable.[46] If the parties to an agreement do not fix the time for performance and no terms show that it could not be performed within a year, the agreement should not be construed as falling within the Statute of Frauds.[47] However, if from the goal to be accomplished and the surrounding circumstances of the agreement it clearly appears that the parties intended the transaction to extend for a period longer than a year, the agreement falls within the Statute of Frauds.[48]

Therefore, even if the term sheets constituted an offer, the Statute of Frauds would prevents its enforcement. Neither party signed the written term sheets purporting to govern the terms of the deal, despite the express term that the parties' relationship would last for longer than one year. The term sheet's "Expiration Date" says "Open End – No fixed Expiration Date."[49] The Valuation Date is expressed as "The last Trading Day of March of each year, commencing *at least one year* after the Issue Date," which could not have occurred if the parties created the certificates after they agreed to the term sheets.[50] Although it is possible that the relationship cease before one year, the term sheets clearly reflect the parties intended to do business for a longer period of time. The Statute of Frauds governs this transaction, and no binding contract can exist if the plaintiff did not sign the term sheets. Given that the term sheets cannot constitute an enforceable contract, the Court cannot uphold the English choice-of-law clause.

---

[45] *Id.*
[46] *LynkUs Communications, Inc. v. WebMD Corp*., 965 So.2d 1161, 1165–66 (Fla. App. 2 Dist. 2007) (citing *Yates v. Ball*, 132 Fla. 132, 181 So. 341, 344 (1938)).
[47] *Id.*
[48] *Id. See also DK Arena, Inc. v. EB Acquisitions I, LLC,* 31 So.3d 313, 327 (2010).
[49] *Id.*
[50] *Id (emphasis added).*

**Florida Law governs plaintiff's tort claims.**

Florida has adopted the "most significant relationship test" from § 145 of the Restatement to decide conflict-of-law questions governing common law tort claims.[51] This test requires courts to apply the local law of the state that has the most significant relationship with the tort in question. To make this determination, Courts consider the locations of the parties, the center of their relationship, and the place of the injury itself.[52] Section 148 of the Restatement has similar location considerations for choice-of-law questions in misappropriation and fraud claims.[53] Section 6 of the Restatement, made applicable in § 145, adds additional considerations such as

[51] *Green Leaf Nursery v. EI DuPont De Nemours and Co.* 341 F.3d 1292, 1301 (11th Cir. 2003) (citing *Garcia v. Public Health Trust of Dade County,* 841 F.2d 1062, 1064-65 (11th Cir.1988)).

[52] Section 145 of the Restatement (Second) of Conflict of Laws reads:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Section 145 advises that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."

[53] Section 148 of the Restatement (Second) of Conflict of Laws reads:

> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

justice, convenience, public policy and justified expectations.[54] Courts analyzing conflict-of-law issues for tort claims consider §§ 145 and 148 together because they are both "significant relationship" tests with factors that substantially overlap.[55]

Each conflict-of-law question arises out of unique facts, and no one factor of the significant relationship tests controls.[56] Because every case is different, some factors may not weigh in favor of either forum.[57]

Policy factors weigh in favor of applying Florida law. Plaintiff's expectation that Florida law applies is justified.[58] Florida is plaintiff's principal place of business.[59] Plaintiff is subject to Florida law as a registered Florida foreign profit corporation. Plaintiff operated a business out of a Florida location and made all relevant business decisions regarding the certificates from Florida. This "nerve center," albeit small, was a necessary element to the transactions between the parties. The Court found the parties conducted at least half of their business and trading relationship in Florida and plaintiff's relevant documents and records are located here.[60]

Other strong policy factors include the place of plaintiff's bankruptcy filing, Florida's allowance of punitive damages, and the ease in applying Florida law. Plaintiff has filed

---

[54] Section 6 of the Restatement (Second) of Conflict of Laws reads:

> A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

[55] *Topp, Inc., v. Uniden American Crop.*, 483 F. Supp. 2d 1187, 1190–1192 (S.D. Fla. 2007) (analyzing tort claims (fraud and non-fraud) under both § 145 and § 148 of the Restatement (Second)).

[56] *See Gulf Group Holdings, Inc. v. Coast Asset Management Corp*., 516 F. Supp 2d 1253, 1270 (S.D. Fla. 2007) (citations omitted); *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla. 1980)..

[57] *See Bishop*, 389 So. 2d at 1001 (rejecting a strict "place of injury rule" in favor of a more flexible, multiple factor theory, on the basis that "the state where the injury occurred may have little actual significance for the cause of action.").

[58] RESTATEMENT (SECOND) OF CONFLICT OF LAWS, §6(d).

[59] A corporate plaintiff's principal place of business has a substantial significance when the loss is pecuniary in nature. RESTATEMENT (SECOND) OF CONFLICT OF LAW § 145 (comment on subsection (2)).

[60] Doc. Nos. 36 and 37 (denying defendant's motion to dismiss for *forum non conveniens*).

bankruptcy in a Florida bankruptcy court and will participate in a jury trial in this adversary proceeding in the United Stated District Court for the Middle District of Florida.[61] Any damages plaintiff recovers from this adversary proceeding will augment the bankruptcy estate administered in Florida.[62] Florida law allows punitive damages to deter unscrupulous conduct like that alleged in the complaint, but application of foreign law may deny plaintiff this remedy. Furthermore, Florida law is undoubtedly easier than foreign law for the District Court in Florida to determine and apply.[63]

Despite the Restatement's guidance using multiple location factors, a court may conclude that a truly international transaction may not have a centered relationship at all. [64] In that case, where a plaintiff has failed to show a significant relationship and interest in foreign law *so* compelling as to transcend application of local substantive law, a court should apply local law.[65] In this case, the transactions between plaintiff and defendant were truly international, involving the sale of international financial instruments from an England-based financial institution to an entity formed in Liberia, incorporated in BVI, with its principal place of business in Florida. There is no single place of conduct causing the injury, and the place of injury itself is difficult to ascertain. Plaintiff made investment decisions from its principal place of business in Windermere, Florida, based on defendant's representations made in the UK.[66] The parties employed global methods of communication to create and then liquidate the certificates, using

---

[61] Federal bankruptcy law governs all core bankruptcy claims regardless of choice of law provisions. Plaintiff has filed for bankruptcy in the Middle District of Florida and also has filed this adversary proceeding asserting, among other claims, claims under §548 and § 550 of the U.S. Bankruptcy Code. These are core claims under 28 U.S.C. § 157(h). Federal bankruptcy law will apply to Counts XII and XIII.

[62] The tort claim's relationship to the bankruptcy can be relevant. *Tew v. Chase Manhattan Bank, N.A.* 728 F. Supp. 1551, 1560–61 (S.D. Fla. 1990) (considering relevant the fact that the Trustee was a resident of Florida).

[63] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (comment h).

[64] *See Commercial U. Ins. Co. v. Upjohn Co.*, 409 F. Supp. 453, 456, 457 (D.C. La. 1976) (holding an international transaction may truly not have a centered relationship at all).

[65] *Id.*

[66] The Restatement has no definite set of rules governing circumstances where a defendant made false representations in one state and plaintiff acted in reliance upon it in another. RESTATEMENT (SECOND) OF CONFLICT OF LAW § 148 (2011) (comment j).

money from Swiss bank accounts, and plaintiff resides and claims it suffered monetary loss in Florida.

Based on the preceding factors, Florida has the most significant relationship to the plaintiff's tort claims and thus Florida law applies to Counts V-X.

**Conclusion**

Plaintiff and defendant have gone to great lengths to prove that their own jurisdiction's laws govern the resolution of this dispute. No express contract exists to determine the parties' choice-of-law wishes. The District Court will determine the law that applies to the purported oral contracts at trial (Counts I-IV, XI). Florida law controls plaintiff's tort claims (Counts V-X) because Florida has the most significant relationship to the claims, and federal bankruptcy law governs plaintiff's claims under the Bankruptcy Code (Counts XII and XIII). A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED on November 10, 2011.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

Copies provided to:

Plaintiff's Counsel: R. Scott Shuker, Latham Shuker Eden & Beaudine LLP, 390 N. Orange Avenue, Suite 600, Orlando, FL 32802

Defendant's Counsel: Mark D. Bloom, Greenberg Traurig, 333 Avenue of the Americas, Suite 4400, Miami, FL 33131

Frank M. Wolff, Esq., Wolff Hill McFarlin & Herron, PA, 1851 W. Colonial Drive, Orlando, FL 32804

Andrew M. Brumby, Esq., Shutts & Bowen, LLP, 300 S. Orange Avenue, Suite 1000, Orlando, FL 32801

Tina L. Caraballo, Esq., Hayes & Caraballo, PL, 830 Lucerne Terrace, Orlando, FL 32801

Maureen A. Vitucci, Esq., Gray-Robinson, PA, 301 E. Pine Street, Suite 1400, Orlando, FL 32801

Miriam G. Suarez, Esq., U.S. Trustee's Office, 135 W. Central Blvd., Suite 620, Orlando, FL 32801